**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| KENTON GIRARD, et al., | ) |
| | ) |
|     Plaintiff, | ) |
| | ) |
|     v. | ) Case No. 26-cv-1443 |
| | ) |
| KAREN PAGE, et al., | ) |
| | ) |
|     Defendants. | ) |

**<u>JANE GIRARD'S MOTION TO DISMISS PURSUANT TO RULE 12(B)(1) AND (6)</u>**

Defendant Jane Girard ("Jane"), through her attorneys of record, Kaplan & Gournis, P.C., for her motion to dismiss Plaintiff Kenton Girard's ("Plaintiff")[1] first amended complaint (the "Complaint" or "Compl.") pursuant to Federal Rule 12(b)(1) and 12(b)(6) (the "Motion"), states:

## <u>INTRODUCTION</u>

For the past several years, Plaintiff (Jane's ex-husband) has been peddling a disgusting lie that Jane sexually abused her children. Plaintiff repeatedly recirculated this lie in an attempt to gain some sort of leverage against Jane in a pending domestic relations case in Cook County, Illinois, Case No. 2015 D 9633 (the "Domestic Relations Case"). After the conclusion of a recent bench trial in the Domestic Relations Case, the Honorable Judge William Yu held that Plaintiff's disgusting allegations "**<u>are wholly devoid of any evidentiary basis whatsoever</u>**." (Feb. 11, 2026 Order, p. 7.) A copy of Judge Yu's decision is attached as Exhibit 1.

In the Complaint, Plaintiff tries to transform his various losses in the Domestic Relations Case into a vast conspiracy. Plaintiff keeps expanding the alleged conspiracy against him to

---

[1] Former-Plaintiff Marissa Girard ("Marissa") has been removed as a plaintiff from this case in this version of the Complaint. This was done in the wake of sanctions being entered against Marissa—an adjudicated liar—in the matter of *Girard v. Girard*, No. 26-cv-1399 by the Honorable Jeremy C. Daniel for her fabrication of a document that she submitted to the court. This was not the first time that Marissa had been sanctioned. On January 25, 2025, the Seventh Circuit also sanctioned Marissa in her appeal of the matter of *Girard v. Girard*, No. 25-1854.

include new alleged conspirators every time Plaintiff is upset with the outcomes in the Domestic Relations Case. The court should dismiss the Complaint pursuant to Rule 12(b)(1) because the court lacks jurisdiction over the claims in the Complaint. In the alternative, the court should dismiss the Complaint pursuant to Federal Rule 12(b)(6) because the Complaint fails to plead any causes of action against Jane.

### BACKGROUND

Plaintiff is Jane's ex-husband, and the two are adversaries in the pending Domestic Relations Case.

Plaintiff alleges that Jane's attorneys in the Domestic Relations Case at Beermann LLP ("Beermann") are engaged in some wide ranging conspiracy with judges, other lawyers, courtroom personnel, municipal employees, and various other parties for the common goal of ruling against Plaintiff in the Domestic Relations Case.

The Domestic Relations Case is still pending, and Beermann still represents Jane in the case against Plaintiff. On February 11, 2026, after a two-day trial on the various motions/petitions in the case, the Honorable Judge Yu entered an order: (1) holding Plaintiffs in contempt of court for their violations of various court orders: (2) granting Jane sole parenting and decision-making for the children; (3) entering sanctions against Kenton in the amount of $187,500.00 based on Kenton's 625 documented instances of denied parenting time for Jane ($300/violation); (4) granting leave to Jane to file a fee petition pursuant to 750 ILCS 5/508; and (5) denying Kenton's various motions. (Feb. 11, 2026 Order, pp. 12-14.) The Domestic Relations Case is still pending as post-trial issues are decided.

The instant Complaint is just one of many examples of Plaintiff's vexatious conduct in the Northern District of Illinois. Plaintiff along with his wife Marissa have abused the federal

court system with their attempts to delay and obfuscate the Domestic Relations Case as follows:

- *Girard v. Village of Glencoe, et al.*, No. 24-cv-6882. Dismissed without prejudice on August 12, 2025 with instructions that Plaintiffs could not proceed with the case and had to proceed in state court or wait until the Domestic Relations Case had concluded. This case was filed on August 4, 2024. As noted in Judge Yu's order, the Domestic Relations Case was set for trial on August 26-28, 2024.

- *Girard v.* Judge *Fernandez, et al.*, No. 25-cv-136. Dismissed for lack of subject matter jurisdiction on March 25, 2026 based on various abstention doctrines in favor of the Domestic Relations Case. This case was filed on January 6, 2025. As noted in Judge Yu's order, the Domestic Relations Case was set for trial on February 18-21, 2025.

- *Girard, et al. v. Judge Scannicchio, et al.*, No. 25-cv-4551. Dismissed for lack of subject matter jurisdiction on April 22, 2026. This case was filed on April 25, 2025. As noted in Judge Yu's order, the Domestic Relations Case was set for trial on May 1-2, 2025.

- *Girard v. Girard,* No. 25-cv-4586. Remanded after frivolous removal of Domestic Relations Case by Plaintiffs. Sanctions entered by Seventh Circuit Court of Appeals for a frivolous appeal. This removal was filed on April 28, 2025. As noted in Judge Yu's order, the Domestic Relations Case was set for trial on May 1-2, 2025.

- *Girard v. Girard,* No. 26-cv-42. Remanded after frivolous removal of Domestic Relations Case by Plaintiffs. Award of attorneys' fees and costs to Jane for the frivolous removal being briefed. This removal was filed on January 5, 2026, 2025. As noted in Judge Yu's order, the Domestic Relations Case was set for trial on January 6-8, 2026.

- *Girard v. Girard,* No. 26-cv-1399. Remanded after frivolous removal of Domestic Relations Case by Plaintiffs. Marissa held in contempt of court for her "vexatious and dishonest litigation tactics." [Docket No. 58.]

As with Plaintiff and Marissa's other complaints, this court lacks jurisdiction to hear this matter because Plaintiff is asking this court to oversee the Domestic Relations Case and pass judgment on the orders/decisions in the Domestic Relations Case. In the alternative, Plaintiff fails to state any claims against Jane. The court should dismiss the Complaint pursuant to Rule 12(b)(1) for lack of subject matter jurisdiction or, alternatively, pursuant to Rule 12(b)(6) for failure to state a claim. Jane also requests that the court refer Plaintiff to the Executive

3

Committee for the Northern District of Illinois for entry of a possible filing bar to prevent his further vexatious and frivolous filings.

## ARGUMENT

I. **The Court Lacks Subject Matter Jurisdiction Pursuant to the Domestic Relations Exception to Federal Jurisdiction, the *Rooker-Feldman* Doctrine, and/or *Younger* Abstention and/or General Abstention Principles**

Federal Rule of Civil Procedure 12(b)(1) provides that dismissal is proper when a court lacks subject matter jurisdiction. F.R.C.P. 12(b)(1). The "presumption of correctness" usually attributed to a complaint's allegations "falls away on the jurisdictional issue once a defendant proffers evidence that calls the court's jurisdiction into question." *Saperstein v. Hager*, 188 F.3d 852, 856 (7th Cir. 1999). Ultimately, the plaintiff must establish the existence of subject matter jurisdiction by competent proof. *Id.* (citing *Commodity Trend Serv., Inc. v. Commodity Futures Trading Comm's*, 149 F.3d 679, 685 (7th Cir. 1998)).

A. **The Domestic Relations Exception to Federal Jurisdiction Applies**

The "domestic relations" exception to federal jurisdiction prevents federal courts from issuing orders involving divorce, alimony, child custody orders, and child support orders. *Syph v. Arce*, 772 F. App'x 356, 357 (7th Cir. 2019). This exception denies federal jurisdiction to exercise powers characteristic of a domestic relations court. *Jones v. Brennan*, 465 F.3d 304, 306 (7th Cir. 2006). This exception prevents the federal courts from forcing their way into a state court matter, "particularly because state courts are assumed to have developed a core proficiency in probate and domestic relations matters." *Sykes v. Cook County Circuit Court Probate Division*, 837 F.3d 736, 741 (7th Cir. 2016); *see Friedlander v. Friedlander*, 149 F.3d 739, 740 (7th Cir. 1998).

Here, Plaintiff's claims against Jane are premised on the ongoing Domestic Relations Case. This claim is squarely within the exception to jurisdiction for domestic relations cases because Plaintiff is attempting to collaterally attack the actions/inactions of his adversaries and

4

the judges in the Domestic Relations Case in this federal action. This court does not have jurisdiction to issue any order as to the efficacy of the Domestic Relations Case or the circumstances giving rise to any issues in that state court proceeding. Plaintiff clearly cannot ask this court to sit as a super-appellate court to the Domestic Relations Case. The court should dismiss this matter.

### B. *Rooker-Feldman* Bars This Suit

The *Rooker-Feldman* doctrine is an important foundation for the division of power between federal and state courts, recognizing that even if a state court judgment is wrong, "that did not make the judgment void, but merely left it open to reversal or modification in an appropriate and timely appellate proceeding." *Rooker v. Fidelity Trust Co.*, 263 U.S. 413, 415 (1923); *see Hadzi-Tanovic v. Johnson*, 62 F.4th 394, 399 (7th Cir. 2023); *Sharif v. Mackoff*, No. 22-1190, 2023 WL 3971410, \*\*3-4 (7th Cir. June 13, 2023)(holding that *Rooker-Feldman* barred federal claims alleging damages caused by state court orders in divorce proceeding).

*Rooker-Feldman* applies to "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Id.* The doctrine applies to federal claims that "directly" challenge a state court judgment or are "inextricably intertwined with one." *Johnson*, 62 F.4th at 399; *Andrade v. City of Hammond*, 9 F.4th 947, 948 (7th Cir. 2021); *Swartz v. Heartland Equine Rescue*, 940 F.3d 387, 391 (7th Cir. 2019).

In this matter, Plaintiff's claims against Jane are premised on various orders and actions in the ongoing Domestic Relations Case. Plaintiff is nevertheless asking this court to undercut or overrule the orders entered in the Domestic Relations Case and to pass judgment on Jane/Beermann's alleged actions in that proceeding. *Rooker-Feldman* clearly bars Plaintiff's

5

claims. *Bauer v. Koester*, 951 F.3d 863, 866 (7th Cir. 2020)(*Rooker-Feldman* barred suit where "any finding in favor of the [plaintiff] would require [the federal court] to contradict the state court's orders"); *Lewis v. Anderson*, 308 F.3d 768, 772 (7th Cir. 2002)("[L]ower federal courts do not have jurisdiction to conduct direct review of state court decisions."); *Ritter v. Ross*, 992 F.2d 750, 754 (7th Cir. 1993)("[A] plaintiff may not seek reversal of a state court judgment simply by casting his complaint in the form of a civil rights action.")

The court should dismiss the Complaint under the *Rooker-Feldman* doctrine.

### C. The Court Should Abstain From Hearing This Case Under *Younger*

The *Younger* abstention doctrine "directs federal courts to abstain from exercising jurisdiction over federal claims that seek to interfere with pending state proceedings." *J.B. v. Woodard*, 997 F.3d 714, 722 (7th Cir. 2021). The doctrine applies where federal court intervention would intrude on civil proceedings implicating a state's interest in enforcing orders and judgments of its courts. *Id.* In analyzing whether *Younger* abstention is proper, a court should consider whether the state proceeding is ongoing, involves important state interest, and provides an adequate opportunity to raise constitutional challenges. *Id.*

The Complaint seeks to have this court meddle in the pending Domestic Relations Case and essentially overturn the orders/decisions of the state court judges in the case. The Domestic Relations Case is ongoing, involves an important state interest in domestic relations/child custody, and these issues should be decided in the Domestic Relations Case.

The court should abstain from hearing this matter under *Younger*.

### D. The Court Should Decline Jurisdiction Under General Abstention Principles

Under established abstention doctrines, a federal court should decline to exercise jurisdiction "where doing so would intrude upon the independence of the state courts and their

ability to resolve cases before them." *SKS & Assocs., Inc. v. Dart*, 619 F.3d 674, 678-80 (7th Cir. 2010); *see Courthouse News Serv. v. Brown*, 908 F.3d 1063, 1071 (7th Cir. 2018)(explaining that the abstention doctrines were "not a perfect fit, and we ultimately base our decision on the more general principles of federalism that underlie all of the abstention doctrines").

Recognizing that abstention doctrines may not be an exact fit to due process challenges in ongoing divorce proceedings, the Seventh Circuit in *Woodard* nevertheless noted the "serious federalism infringement" in allowing a plaintiff to pursue claims while the state court divorce matter was pending. *Woodard*, 997 F.3d at 723.

Moreover, as noted in *Woodard*, the adjudication of claims by a state court domestic relations court loser under the guise of due process claims "threaten interference with and disruption of local family law proceedings—a robust area of the law traditionally reserved for state and local government—to such a degree as to all but compel the federal judiciary to stand down." *Id.* Citing *Courthouse News Service*, 908 F.3d at 1065, the *Woodard* court explained that abstaining from jurisdiction was proper where denying a federal forum "would 'clearly serve an important countervailing interest,' including 'regard for federal-state relations.'" *Woodard*, 997 F.3d at 723.

The same concerns raised in *Woodard* also exist in this matter as Plaintiff is asking this court to interfere with and disrupt the Domestic Relations Case while it is still pending. The court's failure to abstain from this matter would "reflect a lack of respect for the state's ability to resolve [the issues] properly before its courts." *Id.* The court should abstain from hearing this matter under general abstention principles.

For all these reasons, the court lacks subject matter jurisdiction over this matter and the Complaint should be dismissed.

## II. The Complaint Fails to State a Claim Against Jane

A motion to dismiss under Rule 12(b)(6) tests the sufficiency of the complaint. A complaint may be dismissed if the plaintiff fails to allege sufficient facts to state a cause of action that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), *quoting Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A sufficient complaint must allege "more than a sheer possibility that a defendant has acted unlawfully" and be supported by factual content because "[t]hreadbare recitals of the elements of the cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678.

To survive a 12(b)(6) challenge, a complaint must first comply with Rule 8(a) by providing a short and plain statement of the claim showing that the pleader is entitled to relief. *Second Amendment Arms v. City of Chicago*, No. 10-4257, 2012 WL 4464900, *3 (N.D. Ill. Sept. 25, 2012). A complaint should be dismissed as unintelligible where the complaint consists of a narrative that is prolix, digressive, and full of irrelevant details. *Amachree v. Garland*, 2023 WL 3033493, *1 (7th Cir. Apr. 21, 2023); *Mohammed v. Prairie State Legal Services, Inc.*, 2021 WL 4962988, *1 (7th Cir. Oct. 26, 2021); *United States ex rel. Garst v. Lockheed-Martin Corp.*, 328 F.3d 374, 378 (7th Cir. 2003); *see Stanard v. Nygren*, 658 F.3d 792, 798 (7th Cir. 2011).

The Complaint fails the Rule 8(a) test because the incoherent, rambling voluminous Complaint is a stream-of-consciousness narrative, it is full of irrelevant/untrue details, the Complaint contains a plethora of inappropriate and irrelevant footnotes, the Complaint alleges various legal conclusions without the benefit of any alleged facts to support the claims, and the Complaint is brimming with unnecessary and salacious personal attacks on all of the Defendants.[2] Moreover, the Complaint fails to put "[Jane] or the court, on fair notice of the

---

[2] Plaintiff alleges that Jane is "a proven" and "admitted" sex offender, which is of course untrue as already adjudicated in the Domestic Relations Case.

8

claims and does not set the stage for remotely manageable litigation." *Stanard*, 658 F.3d at 797.

The Complaint should be dismissed as unintelligible.

Even if the court does not dismiss the Complaint as unintelligible, the Complaint still fails because Plaintiff does not plead plausible claims against Jane.

### A.     Plaintiff has Failed to Plead Plausible § 1983 Claims

Plaintiff's § 1983 claims (Counts 1-4, 6-10) fail because they are completely conclusory, lack any facts in support of the claims, and are not premised on recognized grounds for constitutional claims against Jane as a non-state actor. *Bartlett v. City of Chicago School District #299*, 40 F. Supp. 3d 959, 963-65 (N.D. Ill. 2014); *Brown v. City of Lake Geneva*, 919 F.2d 1299, 1301-02 (7th Cir. 1990); *Golden State Transit Corp. v. City of Los Angeles*, 493 U.S. 103, 108 (1989)(supremacy clause); *see Holleman v. Zatecky*, 951 F.3d 873, 878 (7th Cir. 2020)(first amendment).

It is also well established that individual liability under § 1983 requires "personal involvement in the alleged constitutional deprivation." *Minix v. Canarecci*, 597 F.3d 824, 833 (7th Cir. 2010); *Bank of Am., N.A. v. Knight*, 725 F.3d 815, 818 (7th Cir. 2013)("Each defendant is entitled to know what he or she did that is asserted to be wrongful. A complaint based on a theory of collective responsibility must be dismissed. That is true even for allegations of conspiracy.")  Plaintiffs' scattershot Complaint improperly groups Jane with other defendants without any allegations of how Jane was allegedly involved at all in the referenced alleged Constitutional deprivations.

For these reasons, the court should dismiss all of Plaintiff's § 1983 claims with prejudice.

### B.     Plaintiff has Failed to Plead a Plausible § 1985 Claim

Plaintiff's § 1985 claim (Count 5) fails because it is completely conclusory and Plaintiff

fails to plead any facts to establish any of the elements of the alleged § 1985 claim against Jane. *Copeland v. Northwestern Mem. Hosp.*, 964 F. Supp. 1225, 1234-35 (N.D. Ill. 1997); *Montgomery v. Scialla Assocs., Inc.*, No. 15-10840, 2016 WL 7116585, *4 (N.D. Ill. Dec. 7, 2016). For this reason, the court should dismiss this § 1985 claim with prejudice.

### III. The Court Should Refer Plaintiff to the Executive Committee for Entry of a Filing Bar

Throughout the various proceedings, Plaintiff and his wife Marissa have exhibited utter contempt for the authority of the courts. They have been sanctioned repeatedly, held in contempt of court, and admonished by numerous courts. They have lied to the court and in pleadings, all the time flaunting the court's authority as they apparently do not believe that the rules apply to them. They do not have any respect for the courts. They should suffer the consequences for their disrespect. Jane requests that the court refer Plaintiffs to the Executive Committee for entry of a barring order enjoining them from filing any new matters or seeking to improperly remove the Domestic Relations Case to this court (as they have already tried to do repeatedly).

### CONCLUSION

For the foregoing reasons, the court should dismiss Plaintiffs' Complaint for lack of jurisdiction or for failure to state a claim against Jane. The court should also refer Plaintiff and Marissa to the Executive Committee for the Northern District of Illinois for entry of a filing restriction order against them to prevent further vexatious conduct.

WHEREFORE, Defendant Jane Girard respectfully requests that this Honorable Court dismiss Plaintiff Kenton Girard's Complaint with prejudice, refer him and Marissa Girard to the Executive Committee, and any other such further relief as this Honorable Court deems just and appropriate.

Respectfully Submitted,

JANE GIRARD,

June 2, 2026      /s/ Chris S. Wunder
Chris S. Wunder (cwunder@kpglaw.com)
Eric D. Kaplan (ekaplan@kpglaw.com)
KAPLAN & GOURNIS, P.C.
One South Wacker Drive
Suite 2400
Chicago, Illinois 60606
Phone: (312) 726-0531
Fax:    (312) 726-4928

## CERTIFICATE OF SERVICE

The undersigned, one of the attorneys for Defendant, hereby certifies that he served the foregoing pleading on all counsel of record / parties by causing a true copy thereof to be transmitted by email through the CM/ECF Filing System for delivery on the date of filing.

/s/ Chris S. Wunder

11

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
## COUNTY DEPARTMENT - DOMESTIC RELATIONS DIVISION

IN RE: THE FORMER MARRIAGE OF   )
                                       )
KENTON GIRARD,                       )
          Petitioner,        )
                                       )
     and                      )   No.   2015 D 009683
                                       )
JANE GIRARD,                    )
          Respondent,      )
                                       )
     and                      )
                                       )
MARISSA GIRARD,               )
      Third Party Respondent.   )

**ENTERED**
Judge William Yu-2221
FEB 11 2026
MARIYANA T. SPYROPOULOS
CLERK OF THE CIRCUIT COURT
OF COOK COUNTY, IL

## RULING ON ALL PENDING MOTIONS AT CONCLUSION OF TRIAL

**THIS MATTER** coming before the Court pursuant to the Court's January 21, 2025 Order setting in person Trial on February 4 and 5, 2026 at 10:30 am each day, and via Zoom at 10:45 a.m. on February 6, 2026; Respondent, Jane Girard ("Jane"), and Jane's counsel, Beermann LLP, present in court; Petitioner, Kenton Girard ("Kenton") failing to appear in person in court or on Zoom, and Third Party Respondent, Marissa Girard ("Marissa") and Third Party Respondent's counsel, Toma Makedonski, failing to appear in person in court or on Zoom; and the Court being duly advised in the premises;

THE COURT MAKES THE FOLLOWING FINDINGS:

A.     Enrico J. Mirabelli of Beermann LLP informed the Court that an email was sent at approximately 5:44 p.m. on February 4, 2026 to Kenton Girard, Marissa

EXHIBIT 1

Girard, and Toma Makedonski, counsel for Marissa Girard informing them that Trial will resume in person at 10:30 a.m. on February 5, 2026 in Courtroom 3005.

B. Mr. Mirabelli informed the Court that an email was sent from Karen Paige at 4:32 p.m. on February 5, 2026 to Kenton Girard, Marissa Girard, and Toma Makedonski, counsel for Marissa Girard informing them that Trial was ordered to resume via Zoom at 10:45 a.m. on February 6, 2026, and that no response was received from any of the recipients of the email.

C. Kenton Girard, Marissa Girard, or her counsel, Toma Makedonski did not file a motion seeking leave of Court to appear via Zoom or otherwise.

D. The Court called the matter for Trial at approximately 11:05 a.m. on February 4, 2026. Kenton Girard, Toma Makedonski counsel for Third Party Respondent, and to Marissa Girard, failed to appear either in person or via Zoom which was on and being continuously monitored.

E. This matter has been previously set for Trial as follows:

    i. August 26, 27, 28, and 29, 2024 before Judge Goldfarb;

    ii. February 18, 19, 20, 21, 2025 before Judge Fernandez;

    iii. May 1, 2, 2025 before Judge Yu;

    iv. January 6, 7, 8, 2026 before Judge Yu;

F.     The Court heard the sworn testimony of the following witnesses: Respondent, Jane Girard in person; Jennifer Hansen, Esq. via Zoom; and the Court's 604.10(b) evaluator, Phyllis E. Amabile, M.D./J.D. (hereinafter sometimes referred to as "Dr. Amabile") in person.

G.     Joel Levin was served with a Trial Subpoena, and appeared via Zoom at approximately 2:50 p.m. on February 5, 2026.   Mr. Levin objected to being called as a witness pursuant 750 ILCS 5/506 as he was formerly the Children's Representative.  After argument, the Court sustained the objection and barred Mr. Levin from testifying, but allowed Mr. Mirabelli to make an offer of proof. Mr. Mirabelli made an offer of proof in a question and answer format.  Mr. Mirabelli identified Jane Girard's Exhibits 94, 95 and 96 as exhibits for said offer of proof, which shall be placed in a sealed envelope.

H.     Kenton failed to appear at Trial and failed to produce any evidence in support of his Motion to Modify Parenting time filed September 7, 2022, and his Motion to Modify the Joint Parenting Agreement filed July 11, 2023.  Nevertheless, based upon the evidence presented to this Court, through the Court's own witness, Phyllis E. Amabile, J.D./M.D., as well as the testimony of Jane Girard, the Court finds that there are no factual bases upon which to grant either of Kenton's Motions.

I.     The Court finds that Jane made a prima facie case of contempt in support of her verified Petition for Rule to Show Cause, filed August 1, 2023.  The

Rule was issued instanter and the burden shifted to Kenton and Marissa to "show cause" why they should not be held in contempt of Court. As they failed to appear in Court to present any evidence to meet their burden, this Court finds Kenton and Marissa in contempt of Court and that they violated this Court's Order of July 25, 2023. Further this Court finds that there is no cause or justification for Kenton and Marissa to have failed to follow the Court's order:

  i.  Kenton and Marissa willfully failed and refused to comply with Paragraph 2 of the above order, specifically that they: "...oversee the deletion of all of the minor children's social media postings which relate to the instant litigation/case, including but not limited to, TikTok accounts, Facebook accounts, and/or any other social media accounts , platforms, and/or web sites. Kenton and Marissa shall oversee that the children delete all such postings within 24 hours of this Court's Order."

  ii.  Kenton and Marissa willfully failed and refused to comply with Paragraph 3 of the above order, specifically: they failed and refused to "...oversee, that neither child shall post any social media postings related to the instant litigation. the deletion of the videos" as required in the above Court Order.

J.  The Court finds that no compelling cause or substantial justification exists for either Kenton or Marissa failing and refusing to follow the Court's July 25, 2023 Order as delineated above.

K.    The Court finds that **Jane Girard** based upon both her testimony and the corroborating testimony of Dr. Amabile, is highly credible. The Court further finds that Jane has been a loving and devoted parent to both children. Her testimony that she was not abusive towards her children, including, but not limited to locking them in a closet, withholding food and abusing them mentally is very credible. She described that she had a very close relationship with the girls and became highly emotional when she described how they enjoyed trips together including Christmas in 2022 in Arizona and New York City before the girls started high school. Dr. Amabile corroborated this finding by testifying that Jane is a devoted and "astonishing" mother. Further, the Court finds that Jane has endured bullying and harassment by Kenton and Marissa and by the children themselves who modeled their inappropriate behavior after Kenton. It is undisputed that Jane's parenting was undermined by Kenton and Marissa.

Jane credibly testified that a "shift" in her relationship with her daughters started after an incident in August 2022, when she and the girls were at an art fair where the girls were manning a booth. Kenton and Marissa were also at the event off to the side and disrupted the girls' manning of the both. Jane approached Kenton and Marissa to see what was going on and a screaming match ensued between the parties that began when Kenton demanded a change in the parenting schedule and threatened he would initiate well-funded litigation against Jane until he got what he wanted.

L.      The Court finds the testimony of **Jennifer Hansen, Esq.** very credible.  The allegations made by Kenton in various pleadings that Jane asserted the Fifth Amendment are unequivocally false.  The Court further finds that at no time during the pendency of these proceedings did Jane Girard ever assert her Fifth Amendment right, nor did Jane at any time have any meeting with Mary Stein, an alleged Assistant State's Attorney, on September 7, 2023, or on any other date.  Moreover, Jane never asserted her Fifth Amendment right with any other state's attorney in Cook County or any other county, or DCFS.  Jane fully cooperated with DCFS, as did her DCFS counsel, Ms. Hansen, and both DCFS investigations in 2023 were "Unfounded" by DCFS.   None of the DCFS meetings were attended by any attorneys from Beermann LLP.

M.      The Court finds that **Phyllis E. Amabile, M.D./J.D.**, the Court's evaluator pursuant to 750 ILCS 5/604.10(b) and its expert witness, has a wealth of significant and relevant experience conducting 604.10(b) evaluations, for over 35 years, including testifying in the Circuit Court of Cook County as well as other Illinois courts.  Based upon Dr. Amabile's sworn testimony, the Court finds Dr. Amabile to be both highly knowledgeable and credible.  The Court places great weight and relies heavily on the independent testimony and written evaluation of Dr. Amabile who conducted an extensive investigation and evaluation in this matter.  Noteworthy, is that fact that Marissa failed to cooperate with the multiple requests to be interviewed by Dr. Amabile.

N.   The Court places great emphasis on Dr. Amabile's opinions s regarding the bald allegations that Jane committed sexual assault against Gwen Girard and Grace Girard.  Significantly, Dr. Amabile opined that there was nothing in the record she reviewed that came close to rape or otherwise.  The basis for this opinion including her consideration of the motive of the individuals involved herein.  She believed that Kenton and Marissa consistently said things to the minor girls to undermine Jane.  The girls knew that Kenton was an intimidating bully and they did not want to be on his wrong side and went along with his wishes related to parenting time.  Stated another way, the girls believed that it would be an easier path to stay at their dad's home to avoid his wrath.  This Court finds, that the totality of the evidence, including Dr. Amabile's opinion,  that the alleged "tampon sexual assault" was an evolving, increasingly embellished and grandiose claim that ultimately became an allegation of rape.  Also, she found it seriously problematic that Kenton believed the girls on this issue 100% and that he was delusional.

Accordingly, Dr. Amabile testified and made an expert determination that no such "tampon sexual assault" occurred against either child by Jane.   The Court finds that the allegations of abuse and neglect, sexual abuse, sexual assault with a tampon, and rape are wholly devoid of any evidentiary basis whatsoever. Therefore, the Court finds that none of the above allegations occurred with respect to either child.

P.   This Court finds that Marissa undermined the relationship between the children and Jane.  This was based, in part, upon Dr. Amabile's review of the

many text messages and emails she describes in her evaluation. Many of these communications from Marissa were condescending towards Jane. The Court finds that the evidence supports that Marissa held herself out as the mother of both children and manipulated them, contrary to the children's best interests. There were multiple instances wherein Marissa overstepped her boundaries as a step mother by holding herself out to be the children's mother to medical professionals and at the children's school. The Court finds that Dr. Amabile's opinion that Marissa acted in concert with Kenton to destroy the children's relationship with their mother to be credible.

Q.     Similarly, this Court finds Dr. Amabile's opinions regarding Kenton Girard to be credible and consistent with the evidence before the Court. The Court finds that beginning in 2021 the relationship between Kenton and Marissa, and Jane, dramatically changed. The Court finds that Kenton bullied and intimidated Jane in an aggressive and vengeful way, contrary to the children's best interests. Further, Dr. Amabile testified that the children "role modeled" Kenton's behavior and have continued to do so as evidenced by the social media post contained in Jane's Exhibit 3 and 3A.

R.     The Court takes judicial notice of Kenton's "Intrastate Notice of Transfer." Kenton claimed that there were "percipient witnesses" of the "sexual assault" by Jane against the minor children. Dr. Amabile testified that in light of her protocol of interviewing collaterals and investigating this matter that the

allegation that "percipient witnesses" exist in this matter is false and not credible. The Court finds Dr. Amabile's expert opinion that the allegation is simply not credible to be credible.

S.     The Court finds that there is no credible evidence that Jane committed any act of abuse or neglect against or towards either Gwen Girard or Grace Girard. The Court finds that the allegations that Jane refused to provide food; refused to provide water; locked either child in a bedroom, closet, basement, car, or any other location; to all be wholly devoid of any evidentiary basis whatsoever.

T.     The Court finds that all allegations concerning abuse of any form alleged in Kenton's various lawsuits lack credibility. The Court takes judicial notice of the Law Division complaint filed under Docket No. 202 L 012053 at Paragraph 1 where Kenton alleges as follows, in pertinent part:... "From at least the age of six onwards, the minor children GW and GR have been subjected to unspeakable physical, psychological and even sexual abuse at the hands of their biological mother, Jane F. Girard..."    The Court notes that the children were six years old in 2014, while Kenton and Jane were still married.  On November 4, 2015 Kenton executed a Joint Parenting Agreement and Custody Judgment, which was entered by the Court as a Judgment on the above date, which states as follows at page 2, paragraph F., in pertinent part: "Jane and Kenton agree and acknowledge that each are good parents to their minor children, and that they will each provide a stable, loving and nurturing environment for their upbringing..."  The Court finds that the statements in the Parenting Agreement and Custody Judgment are in

direct conflict with the allegations in the Law Division complaint. This is further evidence that supports the lack of Kenton's credibility and veracity and that he is delusional.

U.     The Court notes that the children, through their Children's Representative, requested and obtained an opportunity to testify at an *in camera* hearing as set forth in Paragraph A), which was granted as set forth in Paragraph 1) of the Court's April 26, 2024 Order. The Court, as set forth in Paragraphs 1)a. – e. in its May 12, 2024 Order, set the *in camera* for June 10, 2024. The Court further notes that the *in camera* did not take place upon request of the children via the Children's Representative, Joel Levin, who filed a motion to cancel the in camera interview on June 5, 2014, which was granted by the Court on June 14, 2024. The Court takes judicial notice of all of the above Court Orders, and Mr. Levin's pleading, in its file.

V.     The Court finds that Kenton abdicated his parental duties and failed to protect the minor children and that Kenton and Marissa sabotaged their relationship with Jane.

W.     Notwithstanding Kenton's failure to appear, the Court heard evidence contrary to his Motion to Modify parenting time filed September 7, 2022, and the Court hereby finds that it is not in the children's best interests for Kenton to be allocated the parenting time requested or decision-making responsibilities.

X.     The following Exhibits were offered and admitted as evidence:

Ex. 1     Joint Parenting Agreement and Custody Judgment entered November 4, 2015;

**Ex. 2** Email regarding children's cell phones dated May 29, 2019

**Ex. 3** Justice for Gwenn and Grace Instagram post regarding January 16, 2016 Court appearance;

**Ex. 3A** Instagram after January 16, 2026 Court

Group **Ex 4** color prints of photographs July and August 2022

**Ex. 34** Phyllis Amabile c.v.

**Ex. 34A** 750 ILCS 5/604.10(b) Evaluation for the Former Marriage of Girard, Case No. 2015 D 009633 dated September 13, 2023;

**Ex. 98** Notice of Intrastate transfer of Venue filed by Kenton Girard

**Ex. 99** Email from Karen Paige to Kenton Girard, Marissa Girard and Toma Makedonski dated February 4, 2026 at 5:45 p.m.

**Ex. 104** Kenton Girard, Gwen Girard, and Grace Girard's federal lawsuit filed October 25, 2024

**Ex 114** Kenton's Motion to Vacate and Transfer to Judge Daniel dated January 13, 2026.

After hearing all of the testimony at Trial, reviewing the exhibits tendered by Jane, review of the pleadings and orders, and oral argument of Jane's counsel;

**IT IS HEREBY ORDERED:**

1.      At the conclusion of her case in chief, Respondent, Jane Girard, moved to non-suit the following pleadings set for Trial:

      a.      Motion to Appoint a Parenting Coordinator and Compel Use of Our Family Wizard filed on May 27, 2022.

      b.      Motion to Compel Enrollment in Therapy filed on August 31, 2022;

      c.      Amended Motion to Compel Petitioner's Compliance with November 9, 2022 Order, filed November 23, 2022;

      d.      Motion to Modify Paragraph 4.2 of the Joint Parenting Agreement, filed July 13, 2023;

e. Motion for Adjudication for Direct Criminal Contempt and to Declare Kenton and Marissa Vexatious Litigants, filed July 10, 2025.

2. Regarding Jane's August 1, 2023 Petition for Rule to Show Cause:

a. The Court finds Kenton and Marissa in contempt of Court jointly and severally, and issues the Rule against Kenton Girard and Marissa Girard returnable instanter.

b. The purge for said contempt is for Kenton Girard and Marissa Girard to do the following within 24 hours of the entry of this Order:

i. "…oversee the deletion of all of the minor children's social media postings which relate to the instant litigation/case, including but not limited to, TikTok accounts, Facebook accounts, or any other social media accounts , platforms, or web sites.  Kenton and Marissa shall oversee that the children delete all such postings within 24 hours of this Court's Order."

ii. "oversee, that neither child shall post any social media postings related to the instant litigation. the deletion of the videos" as required in the Court's Order of July 25, 2023.

c. Jane is granted leave to file a fee petition pursuant to 750 ILCS 5/508(a) and (b).

3. Regarding Jane's Motion to Modify the Joint Parenting Agreement and Implement the 604.10(b) Recommendations filed on March 13, 2024, the Court grants Jane sole parenting and decision-making, from her requested relief until the date of majority.  Jane seeks no other relief from the above Motion.

4.      Jane's Petition for Finding of Parenting Time Abuse filed September 20, 2022 is granted. The Court finds that both Jane and the Court's expert, Dr. Phyllis Amabile, testified credibly that the minor children have had no overnights with Jane since August 28, 2022 and that Kenton interfered with Jane's allocated fifty percent parenting time without justification. It was in the children's best interests to have had parenting time with Jane for the previous approximately 625 overnights pursuant to the parties' schedule which was an agreed-upon alternating week schedule. 750 ILCS 5/607.5(c)(7) provides as follows:

> (c)      If the court finds a by a preponderance of the evidence that a parent has not complied with allocated parenting time according to an approved parenting plan or a court order, the court, in the child's best interests, shall issue one of more of the following:
>
> ...
>
> (7) an imposition of on the non-complying parent of an appropriate parent civil fine per incident of denied parenting time.
>
> ...

Therefore, the Court orders Kenton (the "non-complying parent") to pay within thirty (30) days to Jane (the "appropriate parent") the sum of $187,500.00, based upon a sanction of $300 per day for 625 "incidents of denied parenting time," consisting of the parenting overnights that Jane was denied while the children solely resided with Kenton. The $300 per day fine is justified due to the length of time – nearly three years that Jane has not had her previously ordered overnight

parenting time, as well as Kenton's all out war to deny her same without any justification.

5.     Jane is granted leave to file a fee petition pursuant to 750 ILCS 5/508 (a) and (b) as well as Supreme Court Rule 137.

6.     Pursuant to the Order of October 7, 2025, the following pleadings of Petitioner, Kenton Girard, were set for Trial.  The Court finds that Kenton had due notice of the Court's Trial dates and failed to appear for Trial each day, despite the Court's January 21, 2026 Order, the service of a 237(b) Notice to Kenton, and daily email notices from Jane's counsel.  Kenton failed to offer any evidence in support of his pending motions.  Therefore, the Court denies with prejudice Kenton's September 7, 2022 Motion to Modify Parenting Time, Decision Making Responsibilities and For Other Relief and  denies with prejudice Kenton's July 11, 2023 Motion to Modify the Joint Parenting Agreement and Custody Judgment.

7.     a.     Jane is granted leave to file a fee petition pursuant to 750 ILCS 5/508 (a) and (b), and Supreme Court Rule 137 within 30 days.

        b.     Jane's Petition for Fees filed September 25, 2025 and Motion for Sanctions filed October 10, 2025 are set for status on the date below, and shall be heard with the above Fee Petitions.

8.     This matter is set for status of Kenton's compliance with the monetary sanctions of $187,500.00 and briefing of Jane's Fee Petitions    on March 13, 2026 at 9:30 a.m. in Courtroom 3005 in person, unless otherwise ordered by this Court.

ENTERED:

_____
Judge William Yu          DATE  2/11/26