

FILED
7/24/2026
THOMAS G. BRUTON
CLERK, U.S. DISTRICT COURT

EK

## THE UNITED STATES DISTRICT COURT
### FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

KENTON GIRARD,

      Plaintiff,

      v.

KAREN V. PAIGE ESQ et al.

      Defendants.

Civil No. 1:26-cv-1443

District Judge Jeffrey I. Cummings

**Plaintiff's Combined Opposition to All Motions to Dismiss**

Plaintiff Kenton Girard, in pro se, for his Combined Opposition to the motions to dismiss filed by Defendants, hereby states as follows:

### PRELIMINARY STATEMENT

At the center of this case is a simple and unambiguous rule of federal law. In *Archdiocese of San Juan v. Feliciano*, 589 U.S. 57 (2020), the Supreme Court held unanimously that once a notice of removal is filed and the state court is notified, the state court is automatically and immediately divested of jurisdiction – full stop. There are no exceptions whether for fraud, frivolity or procedural defect. The sole and exclusive remedy for an improper removal is a motion to remand filed in the federal court. A state court strictly cannot evaluate a federal removal.

On February 4, 2026, Associate Judge William Yu did precisely what *Feliciano* categorically prohibits. With full and documented knowledge that a notice of removal had been filed and noticed on the state court docket, Judge Yu declared the removal a 'nullity,' proceeded to conduct a three-day trial, and on February 11, 2026 entered a sweeping judgment – all while federal jurisdiction was active and exclusive. On April 2, 2026, District Judge Jeremy C. Daniel confirmed that the nullity theory was wrong and that the February 3, 2026 removal was operative.

This action was initiated prior to the February 4-6, 2026 trial and the February 11, 2026

1

judgment. The FAC pleads constitutional violations arising from Judge Yu's knowing and documented disregard of federal removal jurisdiction – conduct that was actively ongoing at the time federal jurisdiction was invoked. The judgment is not the object of this federal action; it is evidence of the continuation of constitutional violations that were already before this Court.

The Motions to Dismiss mischaracterize the FAC, mis-state the governing federal standards and disregard the procedural irregularities that form the basis of Plaintiff's constitutional injury. The FAC plausibly alleges violations of federal due-process rights under 42 U.S.C. §1983, supported by detailed factual allegations concerning void state-court orders, removal-jurisdiction violations, and improper judicial actions that deprived Plaintiff of liberty and property interests without due process of law. Under Rule 12(b)(6), the Court must accept all well-pleaded facts as true and draw all reasonable inferences in Plaintiff's favor. The Complaint easily satisfies this standard: the FAC raises a coordinated scheme in which private attorneys and a state judge jointly acted during federal divestiture to conduct a trial and issue rulings in the clear absence of all jurisdiction, in violation of federal statutes, constitutional guarantees, and binding Supreme Court precedent. These allegations are specific, plausible, and legally sufficient.

Defendants mischaracterize the FAC as a collateral attack on state custody orders, ignore the federal-question basis of jurisdiction, collapse §1983 state-action doctrine into a categorical bar for private attorneys, treat detailed factual allegations as "conclusory," overstate the preclusive effect of prior remand orders and invoke Rule 12(b)(1) without providing any independent jurisdictional argument. Defendant Jane Girard, for her part, attempts to frame the instant matter as a request "to oversee the Domestic Relations Case and pass judgment on the orders/decisions in the Domestic Relations Case." (Dkt 37 at 3) That positioning is nonsensical on both points. First, the underlying custody docket is terminated: Jane's twin daughters attained majority age on

February 15, 2026 and have already relocated out of state to commence their college careers. Second, Plaintiff seeks only damages for completed constitutional torts.

The Seventh Circuit has repeatedly emphasized that litigants alleging constitutional injury arising from state-court proceedings should pursue § 1983 civil-rights claims rather than attempt improper *de facto* appeals of state judgments. See *Nesses v. Shepard*, 68 F.3d 1003, 1005–06 (7th Cir. 1995) (holding that allegations of a corrupt judicial-lawyer conspiracy can be raised in a § 1983 action if there is no requested review of the state court judgment); *Brokaw v. Mercer County*, 235 F.3d 1000, 1019–20 (7th Cir. 2000) (recognizing § 1983 as the proper vehicle for challenging unconstitutional conduct in state proceedings); *Kowalski v. Boliker*, 893 F.3d 987, 995–96 (7th Cir. 2018) (reaffirming that federal civil-rights claims are distinct from forbidden collateral attacks on state judgments); *Bell v. City of Milwaukee*, 746 F.2d 1205, 1233–34 (7th Cir. 1984) (recognizing § 1983 as the proper mechanism for redressing conspiratorial or retaliatory conduct affecting access to federal courts); see also *Christopher v. Harbury*, 536 U.S. 403, 414–15 (2002) (recognizing access-to-courts claims). When a litigant alleges corruption, conspiracy, or *ultra vires* judicial conduct, the proper vehicle is a federal civil-rights action.

## LEGAL STANDARD

A Rule 12(b)(6) motion requires the Court to accept all well-pleaded facts as true and draw all reasonable inferences in Plaintiff's favor. See *Reynolds v. CB Sports Bar*, 623 F.3d 1143, 1146 (7th Cir. 2010); *Silha v. ACT, Inc.*, 807 F.3d 169, 173 (7th Cir. 2015). Dismissal is appropriate only when the complaint fails to state a claim that is plausible on its face. A Rule 12(b)(1) motion requires the movant to demonstrate that the Court lacks subject-matter jurisdiction. See *Bazile v. Finance System of Green Bay, Inc.*, 983 F.3d 274, 279 (7th Cir. 2020); *Silha v. ACT, Inc.*, 807 F.3d 169, 173 (7th Cir. 2015). Notably, *Silha* distinguishes between

factual[1] and facial attacks on subject-matter jurisdiction. Here, Defendants universally mount **facial** challenges but simultaneously attempt to interpose factual denials, which runs afoul of *Silha*'s instruction that, on a facial Rule 12(b)(1) motion, the Court must accept the complaint's well-pleaded allegations as true and may not consider extrinsic factual assertions.

## ARGUMENT

### I.      The FAC does not constitute a collateral attack on a state court judgment.

The Beermann Defendants' collateral-attack argument[2] fails at the threshold because it rests on a fundamental mischaracterization of both (1) what the FAC seeks, and (2) the jurisdictional posture of the underlying state proceedings. Plaintiff does not seek to overturn, modify, invalidate, or enjoin any state-court custody order. He seeks damages for constitutional torts committed by private attorneys and a state judge who acted *during a period when the state court lacked jurisdiction altogether*. Such is not a collateral attack under Seventh Circuit law.

The collateral-attack doctrine applies only when a plaintiff asks a federal court to review, revise, or nullify a state-court judgment. *Gash Assocs. v. Rosemont*, 995 F.2d 726, 728 (7th Cir. 1993). Plaintiff does none of those things. Instead, the FAC alleges that the February 4–6, 2026 trial and the February 11, 2026 "Trial Judgment" were conducted while the state court was divested of jurisdiction under federal law, rendering those proceedings void *ab initio*. A void judgment cannot be given preclusive effect and cannot serve as the basis for collateral estoppel. *United States v. Tittjung*, 235 F.3d 330, 335 (7th Cir. 2000).

The FAC moreover articulates a precise jurisdictional chronology:

---

[1] Only a factual attack permits the Court to consider affirmative matter outside the pleadings (e.g., evidence of judicial estoppel, contractual waiver, or claim preclusion).

[2] A microcosm of the Beermann Defendants' flawed analysis of the matter *sub judice* appears in their reliance on *Gillard v. Nw. Mem'l Hosp.*, 2019 IL App (1st) 182348 (Dkt 39 at 12). They invoke a state-law recusal doctrine in an effort to defeat a federal civil-rights claim alleging ultra vires conduct taken during federal divestiture.

4

1. Plaintiff filed a notice of appeal on January 14, 2026 before the federal clerk mailed the remand certification;

2. Under *Griggs v. Provident Consumer Discount Co.*, 459 U.S. 56 (1982), the filing of a notice of appeal immediately divests the district court of jurisdiction;

3. Under *City of Martinsville v. Express Scripts, Inc.*, No. 24-1912 (4th Cir. 2025), a district court cannot mail a remand certification after divestiture;

4. Under 28 U.S.C. §1446(d), the state court "shall proceed no further" until remand is perfected;

5. Therefore, the state court lacked jurisdiction to conduct any proceedings on February 4–6, 2026, or to distill a resulting judgment on February 11, 2026.

The Beermann Defendants do not address this chronology. The Judicial Defendants misrepresent the matter *sub judice* as a controversy about violation of **Illinois Law** (Dkt 36 at 8). Defendants are universally silent as to the FAC's allegation that the federal clerk's January 15, 2026 letter constitutes a nullity because it was mailed after divestiture and that the Seventh Circuit's mandate did not issue until April 20, 2026. They also ignore that the state court was divested of jurisdiction again on February 3, 2026 by Marissa Girard's independent removal.

Instead, Defendants rely on the conclusory assertion that Judge Daniel and the Seventh Circuit rejected the removal attempts. Even if true, this does not resolve the jurisdictional question the FAC raises: **whether the state court acted during a period when federal law prohibited it from acting at all**. Remand orders do not adjudicate constitutional rights, do not determine whether a state judge acted during divestiture, and do not carry preclusive effect. *Kircher v. Putnam Funds Trust*, 547 U.S. 633, 647 (2006).

The FAC therefore does not challenge the correctness of any remand order. It challenges

*ultra vires* conduct by a state judge and private attorneys who jointly acted in the "clear absence of all jurisdiction," the precise exception carved out under *Stump v. Sparkman*, 435 U.S. 349, 357 (1978), and reaffirmed under *Kowalski v. Boliker*, 893 F.3d 987, 1002 (7th Cir. 2018). A federal damages action for conduct taken without jurisdiction is not a collateral attack; it is the narrow category of claims that federal courts are expressly empowered to hear.

The Beermann Defendants' reliance on Judge Daniel's passing reference to *Astoria* is misplaced. That reference was dicta, has no binding effect, and cannot override 28 U.S.C. §1446(d), *Griggs*, or *Archdiocese of San Juan v. Feliciano*. Federal removal divests the state court of jurisdiction instantly and automatically, without regard to the merits or alleged bad faith of the removal. No district judge's dicta can retroactively validate *ultra vires* state-court actions taken during federal divestiture. The Supreme Court has held: "Once the notice of appeal was filed, the District Court was divested of jurisdiction. Any subsequent order was void." *Feliciano*, 140 S. Ct. at 701. *Astoria*'s "narrow exception" is preempted by the Supremacy Clause.

II.      The FAC plausibly alleges state action and conspiracy.

The argument (Dkt 39) that Plaintiff cannot plead state action or conspiracy[3] under §1983 rests on a misstatement of the law and a mischaracterization of the FAC. When private actors jointly participate with a judge, influence judicial decision-making, or engage in coordinated conduct that results in constitutional injury, they act "under color of state law."

The Supreme Court and Seventh Circuit have repeatedly held that private parties become state actors when they engage in joint participation, concerted action, or a meeting of the minds with a judge or other state official. *Dennis v. Sparks*, 449 U.S. 24, 27–28 (1980); *Tower v. Glover*,

---

[3] The Beermann Defendants' reliance on *Lerman v. Turner*, 2010 WL 4627656, *3* (N.D. Ill. 2010) ("mere characterization of acts as a conspiracy is insufficient") is a category error: *Lerman* involved conclusory allegations with no facts. Literally dozens of overt acts have been raised in the FAC. The Seventh Circuit has held that documentary evidence satisfies the plausibility standard. *Bogie v. Rosenberg*, 705 F.3d 603, 609 (7th Cir. 2013).

467 U.S. 914, 920 (1984); *Brokaw v. Mercer County*, 235 F.3d 1000, 1016 (7th Cir. 2000); *Nesses v. Shepard*, 68 F.3d 1003, 1005 (7th Cir. 1995). Defendants ignore this controlling authority.

> a. **The Trial Notes**[4] **(FAC at Ex. 4) document the joint action in real-time.**

It contains *inter alia* ex parte communications, pre-written judicial findings, requests for specific rulings, Judge Yu's adoption of those requests, procedural instructions issued by attorneys to the judge, statements showing Judge Yu accepted Beermann's framing wholesale, threats and intimidation directed at Plaintiff, evidence that the judge allowed Beermann to dictate the structure, content, and timing of the trial and judgment as well as evidence that the judge allowed Beermann to "close out" issues and direct the order's contents. This is not "ordinary advocacy." It is joint participation under *Dennis v. Sparks*, *Tower v. Glover*, *Brokaw*, and *Nesses*.

The Trial Notes substantiate direct influence over judicial decision-making. First, it demonstrates the Beermann LLP attorneys dictating rulings to Judge Yu. The Notes contain multiple instances where Beermann attorneys tell Judge Yu what findings to make, including: "*Asking to make a finding: Compassionate mother… Harassed, intimidated, abused, defamed by K, G, AND the children.*", "*Make a finding that Dr. Amabile is credible… everything she said in report is still happening.*", "*Make a finding of credibility as to Marissa, Kenton and children.*"and "*Asking you to grant my client that she is the person who makes sole decisions.*". These are not arguments: they are instructions. Under *Dennis v. Sparks*, private actors who "corruptly conspire" with a judge to produce specific rulings act under color of state law. The specificity and tone here go far beyond advocacy. Second, Judge Yu adopts all of the requested findings. The notes show

---

[4] When an exhibit contradicts a conclusory allegation, **the exhibit controls**. See *McCauley v. City of Chicago*, 671 F.3d 611, 616–17 (7th Cir. 2011); *Forrest v. Universal Savings Bank, F.A.*, 507 F.3d 540, 542 (7th Cir. 2007); *Northern Indiana Gun & Outdoor Shows, Inc. v. City of South Bend*, 163 F.3d 449, 454–55 (7th Cir. 1998)(Documents attached to a complaint are considered part of the complaint and may trump contradictory allegations.); *Thompson v. Illinois Dep't of Prof'l Regulation*, 300 F.3d 750, 754 (7th Cir. 2002)(When a plaintiff attaches documents and relies upon them to form the basis of a claim, dismissal is appropriate if the document negates the claim.).

Judge Yu agreeing to: issue Rules to Show Cause "*instanter*", adopt credibility findings, incorporate Beermann's proposed findings into a "*complete order*", "*add my own findings*" but only after Beermann frames the order. This amounts to demonstrable joint participation.

The Trial Notes furthermore show procedural control of the proceedings by Beermann LLP. First, the Beermann LLP attorneys are manifestly directing Judge Yu on procedure. Examples include *inter alia*: "*Rule shall issue instanter.*", "*Allow us to frame out proposed and detail what is still open and what is closed out.*", "*We will submit proposed Findings of Fact and Conclusions of Law today.*", "*I am going to add my own findings… so it's in 1 complete order.*". This amounts to procedural control of the judicial process by private attorneys. Under *Nesses*, when private attorneys "corrupt the judicial process," they become state actors. Second, Judge Yu allows Beermann LLP to decide which issues are "closed out." This is extraordinary. Judges do not allow private counsel to determine which issues remain open, which are closed, what findings will be included or how the order will be structured. This is evidence of a meeting of the minds.

The Notes show ex parte pre-ruling coordination. First, the tone and content show pre-written closing arguments, pre-determined findings, pre-coordinated procedural steps and pre-arranged sanctions. Second, Judge Yu's statements prove he was following Beermann LLP's proffered roadmap. Examples include: "*I'm inclined to tie the findings related to Kenton or Marissa in this order so it's in 1 complete order.*", "*Get it over asap.*". This is collaboration.

Importantly, the Trial Notes adduce realtime[5] explicit threats[6] of contempt, punitive incarceration and procedural intimidation[7] relevant to Section 1985(2). First, there are actual

---

[5] For avoidance of doubt: the Trial Notes were emailed to Plaintiff by Beermann LLP on February 6, 2026 – fully five days before Judge Yu entered his sweeping judgment distilling his rulings from his *ultra vires* trial.

[6] The Judicial Defendants misapprehend the standard under §1985(2): *threats* are squarely prohibited, not just completed acts. There is **no requirement** that a judge actually incarcerate the plaintiff, a contempt petition be adjudicated or a punitive sentence be imposed.

[7] Threats, coercion, procedural intimidation and *ultra vires* sanctions are actionable under Section 1985(2). See *Haddle v. Garrison*, 525 U.S. 121 (1998) (retaliatory acts are actionable); *Bell v.*

direct threats of criminal exposure. The notes show: "*Rule shall issue instanter.*", "*We all have to stand up to the bully.*", "*Both Kenton and Marissa are the bully.*", "*This fine will punish the Girards and the system.*". Under §1985(2), "force, intimidation, or threat" includes threats of contempt, threats of sanctions, threats of punitive findings and coordinated efforts to weaken federal cases. Second, Judge Yu literally adopts the threats, resulting in joint intimidation.

Further, the Trial Notes show Beermann LLP dictating the narrative and Judge Yu accepting it in full, without exception. First, Beermann's narrative is wholesale adopted. The notes show Beermann asserting: Plaintiff is "*delusional,*" Plaintiff "*weaponized the children*", Plaintiff "*never forgave his ex-wife*", Plaintiff "*is a bully*", Plaintiff "*intimidates*" and Plaintiff "*has no respect for the truth*". These are not evidence-based findings: they are **advocacy statements**. Judge Yu adopts all of them. Second, Judge Yu allows Beermann LLP to define credibility. Beermann instructs: "*Start with J Hansen… Jennifer testified… Jane Girard… Dr. Amabile…*". Judge Yu adopts these credibility findings: this is joint action.

The Beermann attorneys instruct Judge Yu as to what the final order must contain. Examples include: "*Find no evidence in the record.*", "*Find no credible evidence of rape, sexual abuse.*", "*Grant my client sole decision-making.*", "*Deny Kenton's petitions WITH PREJUDICE.*", and "*Order removal of all posts.*". These are direct instructions. Second, Judge Yu duly agrees to incorporate these instructions. He states: "*I am going to add my own findings… so it's in 1 complete order*". This is not judicial independence: it is collusion.

**b.    The FAC alleges specific overt acts demonstrating joint participation.**

The FAC alleges specific acts, supported by dates, emails, and documentary exhibits, showing coordinated conduct between private attorneys and Judge Yu. Attorney Paige emailed

---

*City of Milwaukee*, 746 F.2d 1205, 1233 (7th Cir. 1984) (intimidation of federal litigants actionable); *Kush v. Rutledge*, 460 U.S. 719, 724–25 (1983) (first clause covers intimidation of federal litigants; no class-based animus required).

9

Judge Yu a "wish list" of rulings on February 6, 2026, which the judge then incorporated into his February 11, 2026 judgment. (FAC ¶¶10–11; Ex. 4). Attorney Meyers emailed Judge Yu stating that the trial would proceed despite receiving Marissa Girard's Notice of Removal. (FAC ¶50). Attorney Paige emailed Plaintiff stating that trial would proceed and that Rules to Show Cause would be sought "instanter." (FAC ¶¶51, 55). Attorney Elster instructed Judge Yu that jurisdiction had returned to state court, despite Plaintiff's explicit objections and federal divestiture under *Griggs*. (FAC ¶47). Attorney Sevin conceived and advocated the "nullity" theory, which Judge Yu adopted to override federal removal. (FAC ¶56). Beermann LLP attorneys coordinated pressure on Judge Yu to conduct trial during federal divestiture. (FAC ¶¶10, 14, 56). These are overt acts taken outside the judicial process, designed to influence a judge's exercise of power.

Under Seventh Circuit law, these allegations easily satisfy the joint-action standard. See *Brokaw*, 235 F.3d at 1016 (private actors liable when they "conspired with state officials to deprive the plaintiff of constitutional rights"); *Nesses*, 68 F.3d at 1005.

### c. The FAC alleges a "meeting of the minds" and coordinated action.

The FAC alleges: "Jane and her legal team reached a 'meeting of the minds' with Judge Yu." (FAC ¶10). This allegation is supported by the Trial Notes as detailed *supra*, emails to Judge Yu, coordinated pressure to proceed with trial and overt acts taken to override federal removal. The Seventh Circuit requires only an agreement, overt acts, and a deprivation of rights. See *Beaman v. Freesmeyer*, 776 F.3d 500, 510 (7th Cir. 2015). The FAC duly alleges all three.

### d. The cases the Beermann Defendants cite are not analogous.

The Beermann Defendants (Dkt 39) rely on *Spiezer*, *Krisher*, *Cooney*, *Fries*, *Maniscalco*, and *Herndon*. These cases involved no specific emails, no instructions to a judge, no jurisdictional manipulation, no coordinated conduct, no federal removal issues (and certainly no overt acts

10

taken during divestiture) and no documentary exhibits showing joint participation. None involved private attorneys instructing a state court judge to proceed during federal divestiture. Furthermore, the carve-out under *Dennis v. Sparks* does not require bribery.

### e. The FAC alleges conduct taken during the "clear absence of all jurisdiction".

Judge Yu acted specifically: i) after Plaintiff filed a notice of appeal, ii) the district court was divested under *Griggs*, iii) without lawful remand certification as required under *City of Martinsville* and iv) while §1446(d) prohibited the state court from proceeding. When a judge acts in the "clear absence of all jurisdiction," private actors who jointly participate in that conduct are liable under §1983. *Stump v. Sparkman*, 435 U.S. 349, 357 (1978); *Kowalski v. Boliker*, 893 F.3d 987, 1002 (7th Cir. 2018). The Beermann Defendants do not address this doctrine at all.

### f. The FAC alleges non-judicial acts by private attorneys.

The Beermann Defendants argue that their conduct was "ordinary advocacy." The FAC alleges the opposite: they instructed a judge to proceed during federal divestiture pushing a bogus "nullity" theory to override federal law. Furthermore, the Beermann Defendants pushed a "wish list" of rulings as detailed *supra*, coordinated a state court trial during the period of federal removal and threatened Plaintiff with immediate criminal exposure. These are non-judicial acts that fall squarely within the joint-action doctrine.

### g. The FAC alleges a deprivation of federal rights caused by the conspiracy.

The FAC alleges violation of the Supremacy Clause, violation of §1446(d), violation of due process, violation of First Amendment rights, violation of the right to an impartial tribunal and violation of the right to access federal courts. These are cognizable constitutional injuries. The argument that Plaintiff "cannot allege any deprivation" ignores the detailed allegations.

III.     Deprivation of federal rights has been adequately pleaded.

The Beermann Defendants' assertion that Plaintiff "cannot allege any deprivation of rights" is incorrect as a matter of law and contradicted by the detailed factual allegations in the FAC. The FAC alleges multiple, discrete violations of federal rights arising from Defendants' coordinated conduct during a period when the state court was divested of jurisdiction under federal law. Each violation is independently actionable under §1983 and §1985(2). The argument rests on a fundamental misunderstanding of the nature of constitutional injury.

**a.      Constitutional injury does not require inability to file.**

The Beermann Defendants repeatedly argue that Plaintiff suffered no deprivation because he "continues to file suits" and "removed the State Court Proceedings three times[8]." This argument misunderstands constitutional law. The Seventh Circuit has made clear that a First Amendment retaliation claim does not require cessation of activity. It requires adverse action intended to chill protected activity. *Surita v. Hyde*, 665 F.3d 860, 878 (7th Cir. 2011). A due process violation does not require total inability to litigate.  Instead, it requires deprivation of liberty or property without lawful process. *Mathews v. Eldridge*, 424 U.S. 319, 332 (1976). A right-of-access claim does not require complete foreclosure.  Rather, it requires conduct that "frustrates or impedes" access. *Harbury v. Christopher*, 536 U.S. 403, 414–15 (2002).

"Notice and ability to attend" does not set forth the legal standard for constitutional injury under §1983 or §1985(2). It is a deliberate misdirection. Under controlling Supreme Court and Seventh Circuit precedent: due process is violated when a court acts without jurisdiction, even if notice was given. *Archdiocese of San Juan v. Feliciano*, 140 S. Ct. 696 (2020); *Griggs v. Provident Consumer Discount Co.*, 459 U.S. 56 (1982). First Amendment retaliation does not

---

[8] In point of fact, Plaintiff removed the state court proceedings **on a single occasion** in early January 2026.

12

require inability to attend or file. *Surita v. Hyde*, 665 F.3d 860, 878 (7th Cir. 2011). Right-of-access claims do not require total foreclosure. *Harbury v. Christopher*, 536 U.S. 403, 414–15 (2002). §1985(2) intimidation does not require physical obstruction. *Bell v. Milwaukee*, 746 F.2d 1205, 1233 (7th Cir. 1984). The Beermann Defendants are trying to smuggle in a state-court procedural sufficiency test to defeat federal constitutional claims[9].

### b.   The FAC alleges multiple independent violations of federal rights.

As to the Supremacy Clause and §1446(d), Defendants jointly pressured Judge Yu to conduct trial after removal (and before remand), in violation of §1446(d), which provides that "the State court shall proceed no further unless and until the case is remanded." Plaintiff filed a notice of appeal before the clerk mailed the remand certification; under *Griggs*, the district court was divested; under *City of Martinsville*, the clerk could not lawfully mail the remand certification; and under §1446(d), the state court was prohibited from acting. Federal removal statutes (28 U.S.C. §§ 1441–1446) create a bright-line rule: upon removal, the state court loses jurisdiction. Proceeding with trial during federal divestiture is a cognizable constitutional injury.

As to due process, the FAC alleges that Judge Yu conducted trial without jurisdiction, imposed sanctions without jurisdiction, issued rulings without jurisdiction and did so at the urging of private attorneys. A trial conducted in the clear absence of jurisdiction is a due process violation. See *Stump v. Sparkman*, 435 U.S. 349, 357 (1978); *Kowalski v. Boliker*, 893 F.3d 987, 1002 (7th Cir. 2018). Furthermore, the Supreme Court has held that a judgment entered without jurisdiction is void. *Johnson v. Mississippi*, 403 U.S. 212, 216 (1971).

As to the right to an impartial tribunal, the FAC alleges that Defendants provided Judge Yu with a "wish list" of desired rulings, instructed him to ignore removal, pressured him to adopt a

---

[9] Additionally, *Martin v. Haling*, 94 F.4th 667, 671 (7th Cir. 2024) is not on point: *Martin* involved a valid state-court proceeding, conducted with jurisdiction, where the plaintiff alleged procedural unfairness not *ultra vires* conduct.

13

"nullity" theory and coordinated an *ultra vires* trial. Judge Yu was not acting as a neutral arbiter but as an instrument of Defendants' coordinated scheme. The Seventh Circuit recognizes impartial-tribunal claims under §1983. *Bracy v. Gramley*, 520 U.S. 899, 904–05 (1997).

As to the First Amendment, the February 11, 2026 judgment ordered destruction of speech (social-media posts), the trial and judgment were "calculated to punish Plaintiff" for filing federal lawsuits, Defendants threatened immediate Rules to Show Cause "instanter," and Defendants' coordinated conduct was intended to chill Plaintiff's federal litigation. This suffices per *Surita*, 665 F.3d at 878; *Gross v. Town of Cicero*, 619 F.3d 697, 704 (7th Cir. 2010).

The right of access to court is similarly substantiated. Defendants' conduct was intended to "defeat federal court jurisdiction" and "chill" Plaintiff's federal suits to create adverse findings for collateral use. This states a claim under *Harbury*, 536 U.S. at 414–15.

Finally, violation of §1985(2) is also sufficiently pleaded. The FAC alleges threats of immediate criminal exposure ("instanter" Rules to Show Cause), intimidation and coordinated conduct intended to weaken federal cases and obstruct federal proceedings. This suffices pursuant to *Bell v. Milwaukee*, 746 F.2d 1205, 1233 (7th Cir. 1984).

### c. The attorney conduct at issue is not "ordinary advocacy".

The FAC alleges conduct far beyond routine litigation advocacy including without limitation: instructing a judge to adopt a "nullity" theory and how to proceed during federal divestiture; threatening immediate criminal exposure and manipulating jurisdictional determinations. These are non-judicial acts taken in concert with a judge. They are actionable under §1983 and §1985(2). See *Dennis*, *Tower*, *Brokaw* and *Nesses*.

### d. The argument that "no rights were violated" ignores the FAC's core theory.

The FAC alleges that all constitutional injuries flowed from one central fact: Judge Yu

14

acted without jurisdiction. When a judge acts in the clear absence of jurisdiction, every action taken is a constitutional violation. *Stump*.

### e. The FAC alleges causation.

The FAC alleges that Defendants' coordinated conduct caused Judge Yu to proceed with trial, caused Judge Yu to adopt the "nullity" theory, caused Judge Yu to issue rulings without jurisdiction, imparted sanctions and adverse findings, led to destruction of speech and was calculated to chill Plaintiff's federal litigation. These allegations satisfy causation under §1983. See *Beaman*, 776 F.3d at 510; *Loubser v. Thacker*, 440 F.3d 439, 442–43 (7th Cir. 2006); *Whitlock v. Brueggemann*, 682 F.3d 567, 582–83 (7th Cir. 2012).

## IV. The §1985(2) count is allowable here.

The Beermann Defendants' attack on Count V rests on a series of doctrinal errors: they misstate the structure of §1985(2), misapply the class-based animus requirement, mischaracterize the FAC's allegations of intimidation and threat, and incorrectly assert that Plaintiff must plead a conspiracy involving federal judges. None of these arguments withstand scrutiny.

### a. The Beermann Defendants misstate the structure of §1985(2).

Section 1985(2) contains two distinct clauses, each with different elements. The first clause protects participation in federal judicial proceedings. No class-based animus required. This clause prohibits conspiracies to deter parties or witnesses "by force, intimidation, or threat."

**The FAC expressly invokes the first clause.** (FAC ¶81). The Seventh Circuit has held that no class-based animus is required for claims under the first clause. *Williams v. St. Joseph Hosp.*, 629 F.2d 448, 451 (7th Cir. 1980); *Bell v. Milwaukee*, 746 F.2d 1205, 1233 (7th Cir. 1984). Under *Kush v. Rutledge*, 460 U.S. 719, 724–25 (1983) the first clause of §1985(2) contains multiple distinct prohibitions. The party/witness intimidation clause is independently actionable.

15

### b. The FAC meets requirements required by the first clause.

The FAC alleges threats of immediate criminal exposure. Attorney Paige emailed Plaintiff: "At the conclusion of our case we will be asking for the Rules to Show Cause to issue and be made returnable instanter." (FAC ¶55). A threat of immediate criminal contempt – particularly when issued during federal divestiture – is a textbook threat under §1985(2). Attorney Meyers proceeded with the trial call despite receiving Marissa Girard's Notice of Removal (FAC ¶50).

Continuing, Attorney Sevin "conceived of the false proposition" that removal was a "nullity," which Judge Yu adopted in his ruling on February 4, 2026 (FAC ¶56). This is coercive conduct intended to strip Plaintiff of federal protections. Defendants acted jointly to greenlight trial during federal divestiture, create adverse findings for collateral use and "weaken" Plaintiff's federal cases (FAC ¶84). This is precisely the type of intimidation §1985(2) prohibits.

Moreover, a threat is actionable even if not carried out. Section 1985(2) expressly prohibits conspiracies to "deter," "intimidate," or "threaten" a litigant, and courts have long held that the injury **arises from the threat itself**, not from whether the threatened act ultimately occurs. See *Bell v. City of Milwaukee*, 746 F.2d 1205, 1233 (7th Cir. 1984) (holding that intimidation and threats designed to chill access to the courts are actionable even if the threatened harm does not materialize); *Haddle v. Garrison*, 525 U.S. 121, 126–27 (1998) (the conspiracy and intimidation are themselves actionable); *Kush v. Rutledge*, 460 U.S. 719, 724–25 (1983).

### c. The FAC alleges a conspiracy involving a state judge, not federal judges.

The Beermann Defendants argue Plaintiff must plead a conspiracy involving Judge Yu, Judge Scannicchio, NDIL judges, SDIL judges and Seventh Circuit judges. This is a strawman argument. Indeed, the FAC alleges a conspiracy involving Jane Girard, Beermann LLP attorneys Paige, Meyers, Elster, and Sevin; and Judge Yu. No federal judges are alleged to have participated

16

in the conspiracy. The FAC alleges that Defendants' coordinated conduct **affected** federal proceedings – not that federal judges joined the conspiracy. Conspiracies involving private attorneys and state judges are actionable under §1985(2). *Bell*, *Williams*, *Brokaw* and *Nesses*.

### d. The FAC alleges overt acts in furtherance of the conspiracy.

The FAC alleges numerous overt acts, including instructing Judge Yu to adopt the "nullity" theory and to proceed with trial, provision of a "wish list" of desired rulings, threats of immediate criminal exposure and coordinated efforts to override federal removal. Such overt acts satisfy the requirement under *Beaman v. Freesmeyer*, 776 F.3d 500, 510 (7th Cir. 2015).

### e. The FAC alleges injury cognizable under §1985(2).

The FAC alleges that Plaintiff was deterred from attending trial due to threats and intimidation and his federal cases were weakened by coordinated conduct; that Plaintiff's constitutional rights including free speech and access to federal court were violated by *ultra vires* trial proceedings. These injuries fall squarely within §1985(2). See *Bell*, 746 F.2d at 1233 (injury includes intimidation affecting federal litigation).

### f. The Beermann Defendants' reliance on *Pitts v. Turner* is misplaced.

In *Pitts v. Turner,* 522 F. Supp. 2d 799 (N.D. Ill. 2007), the plaintiff alleged no threats, no intimidation, and no coordinated conduct. The case involved routine litigation activity.

### g. Exhibit 4 literally documents the conspiracy.

The Beermann Defendants argue Exhibit 4 is merely "internal trial notes." The FAC alleges it is a "wish list" of desired rulings. Whether Exhibit 4 is a "wish list" or "notes" is a factual dispute not resolvable on a motion to dismiss. See *McCauley v. City of Chicago*, 671 F.3d 611, 617 (7th Cir. 2011); *Geinosky v. City of Chicago*, 675 F.3d 743, 749 (7th Cir. 2012). What matters is that Exhibit 4 shows private attorneys communicating desired rulings to a judge, the

17

judge adopting those rulings and coordinated conduct consistent with a conspiracy.

V.      Rule 12(b)(1) provides no basis for dismissal.

At the threshold, abstention is a prudential, discretionary doctrine which is not properly raised under a Rule 12(b)(1) motion. It is not a jurisdictional instrumentality. See *Sprint Communications, Inc. v. Jacobs*, 571 U.S. 69, 72 (2013); *SKS & Assocs. v. Dart*, 619 F.3d 674, 677 (7th Cir. 2010); *Courthouse News Serv. v. Brown*, 908 F.3d 1063, 1071 (7th Cir. 2018). All Defendants miss this point. A request for abstention must be raised under Rule 12(b)(6) or Rule 12(c) or via a motion to stay. Contrary to Defendants' positioning, Rooker-Feldman is not an abstention doctrine. See *Taylor v. Federal Nat'l Mortgage Ass'n*, 374 F.3d 529, 533 (7th Cir. 2004); *GASH Assocs. v. Village of Rosemont*, 995 F.2d 726, 728 (7th Cir. 1993); *Harold v. Steel*, 773 F.3d 884, 885–86 (7th Cir. 2014). Rooker-Feldman does not apply where a plaintiff alleges an independent constitutional injury. *Jakupovic v. Curran*, 850 F.3d 898, 902 (7th Cir. 2017).

Moreover, Younger abstention is categorically unavailable in a damages action. See *Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706, 730–31 (1996); *Gakuba v. O'Brien*, 711 F.3d 751, 753 (7th Cir. 2013). The Woodard doctrine requires an active state court proceeding (see *Girard v. Village of Glencoe*, Civil No. 1:24-cv-06882, at Dkt 121). The Domestic Relations Exception does not apply in a federal question case. See *Sykes v. Cook County*, 837 F.3d 736, 741 (7th Cir. 2016); *Jones v. Brennan*, 465 F.3d 304, 307 (7th Cir. 2006). Plaintiff seeks no domestic relations style relief. The underlying custody case was voluntarily nonsuited by Jane Girard on January 5, 2026, and the twin daughters reached majority on February 15, 2026, divesting the family court of jurisdiction under Article VI, Section 9 of the Illinois Constitution. The exception applies only to diversity cases seeking divorce, alimony, or child custody decrees. *Ankenbrandt v. Richards*, 504 U.S. 689, 703 (1992). NDIL judges have already held in Plaintiff's related cases that neither

18

Rooker-Feldman nor Younger abstention applies[10]. Defendants ignore these rulings entirely.

For their part, the Judicial Defendants (Dkt 36 at 4) opine: "If this Court allows Plaintiff to continue with the case before it, this proceeding will interfere with the State's ability to enforce the orders entered in the domestic relations case and to resolve the domestic relations matter." This is misleading on several levels. Federal damages actions do not interfere with state enforcement of orders. Indeed, federal courts have an "unflagging obligation" to exercise jurisdiction over federal questions. *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 817 (1976). Moreover, the Seventh Circuit has repeatedly rejected such "interference" framing. See *Gakuba v. O'Brien*, 711 F.3d 751, 753 (7th Cir. 2013); *Quackenbush v. Allstate*, 517 U.S. 706, 730–31 (1996). As noted *supra* per the scope of the Woodard doctrine, there is no pending custody proceeding, and no declaratory or injunctive relief is sought. Void order doctrine demolishes their framing: the February 2026 trial and resulting order materialized when jurisdiction was exclusively federal. *United States v. Tittjung*, 235 F.3d 330, 335 (7th Cir. 2000).

Finally, remand orders do not deprive this Court of jurisdiction over federal claims. Remand orders under §1447(c) are not judgments. They do not adjudicate federal rights or impart preclusive effect, and they certainly do not bar subsequent federal claims arising from constitutional violations. *Kircher v. Putnam Funds Trust*, 547 U.S. 633, 647 (2006). The FAC does not challenge any remand order: it challenges *ultra vires* conduct as described *supra*.

VI.     Rule 12(b)(6) fares no better.

Even if this Court were to reach the merits, Jane's 12(b)(6) arguments fail. Jane argues that the complaint is unintelligible and that she is a private party who cannot be liable under § 1983.

---

[10] In *Minor Child Gw et al. v. Scannicchio et al.*, Civil No. 1:25-cv-04551, District Judge Sara Ellis (Dkt 76, April 28, 2026) confirmed that neither Rooker-Feldman doctrine nor Younger abstention precluded federal jurisdiction over claims arising from the underlying custody docket. Younger abstention directs federal courts to abstain from exercising jurisdiction over claims that would interfere with *pending* state proceedings. *J.B. v. Woodard*, 997 F.3d 714, 722 (7th Cir. 2021).

Neither argument is correct. The FAC is detailed, supported by documentary exhibits including emails, court orders, and the inadvertently disclosed Beermann LLP Trial Notes. Whatever criticisms may be directed at its rhetorical tone, it cannot fairly be characterized as the kind of unintelligible stream-of-consciousness pleading that warrants dismissal under *Stanard v. Nygren*, 658 F.3d 792 (7th Cir. 2011) or *Swanson v. Citibank, N.A.*, 614 F.3d 400, 404 (7th Cir. 2010).

Private parties who act in concert with state officials to deprive individuals of constitutional rights are liable under § 1983. See *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 152 (1970); *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 941–42 (1982); *Fries v. Helsper*, 146 F.3d 452, 457 (7th Cir. 1998). Jane and her legal team reached a 'meeting of the minds' with Judge Yu to defy federal jurisdiction and to obtain a predetermined outcome. The Trial Notes document the specific findings Jane's team sought and delivered by Judge Yu. The private party state action question is fact-intensive and not appropriately resolved on the face of the pleadings.

Jane orchestrated the 'wish list' of desired judicial findings, directed her legal team's strategy to override federal jurisdiction, non-suited her custody claims at a strategically calculated moment, and used the void February 11, 2026 findings to seek collateral estoppel advantage in the pending Rape Lawsuit (*Gwen Girard v. Jane Girard*, Cook County Case No. 2024-L-012053). These are specific allegations of personal conduct, not allegations of collective responsibility.

VII.     Judicial immunity is wanting.

Judge Yu acted in the "clear absence of all jurisdiction", wherein he conducted a sham trial in the state court and distilled a resulting order when the proceeding had been removed to federal court. Therefore, he cannot avail of judicial immunity. *Stump v. Sparkman*, 435 U.S. 349 (1978)

Moreover, Defendant Scannicchio (who is not a "chief judge", but the "presiding judge" of the Cook County Domestic Relations Division) issued orders during federal divestiture,

adopted the "nullity" theory, enforced void orders and participated in *ultra vires* conduct. These are **personal acts**, not supervisory acts. From a separate point of view, Defendant Scannicchio is merely a judicial allocator and therefore fulfills a purely administrative, ministerial function. She does not exercise judicial discretion and therefore, regardless of her "judge" title, Defendant Scannicchio also cannot avail of judicial immunity. *Forrester v. White*, 484 U.S. 219, 228–30 (1988); *Kowalski*, 893 F.3d at 999.

**WHEREFORE**, Plaintiff KENTON GIRARD prays this Court deny the Motions to Dismiss brought by Defendants hereunder.

Dated: **July 24, 2026**                                     Respectfully Submitted,

                                                                            /s/ Kenton Girard, *In Pro Se*
                                                                            965 Forestway Drive
                                                                            Glencoe, IL 60022
                                                                            Email: kg5252@yahoo.com
                                                                            Tel: (773) 575-7035

### CERTIFICATE OF SERVICE

The undersigned attests that the foregoing paper has been electronically filed with the Court and served on all counsel of record.

Dated: **July 24, 2026**                                     /s/ Kenton Girard

21